Slip Op 15 - 116

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| DIAMOND SAWBLADES MANUFACTURERS COALITION, | |
| Plaintiff, | |
| v. | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, | Court No. 13-00241 |
| Defendant, | |
| and | |
| BEIJING GANG YAN DIAMOND PRODUCTS COMPANY, GANG YAN DIAMOND PRODUCTS, INC., CLIFF INTERNATIONAL LTD., HUSQVARNA CONSTRUCTION PRODUCTS NORTH AMERICA, INC., HEBEI HUSQVARNA-JIKAI DIAMOND TOOLS CO., LTD., WEIHAI XIANGGUANG MECHANICAL INDUSTRIAL CO., LTD., BOSUN TOOLS CO., LTD., and BOSUN TOOLS INC., | |
| Defendant-Intervenors. | |

**OPINION**

[Sustaining second administrative review of antidumping duty order on diamond sawblades and parts thereof from the People's Republic of China.]

Decided: October 21 , 2015

*Daniel B. Pickard* and *Maureen E. Thorson*, Wiley, Rein & Fielding, LLP, of Washington, DC, for plaintiff.

*Alexander V. Sverdlov*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant. With him on the brief were *Benjamin*

*C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director. Of Counsel on the brief was *Aman Kakar*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

*Jeffrey S. Neeley* and *Michael S. Holton*, Hush Blackwell, LLP, of Washington, DC, for defendant-intervenors Beijing Gang Yan Diamond Products Company, Gang Yan Diamond Products, Inc., and Cliff International Ltd.

*John D. Greenwald*, *Robert C. Cassidy*, *Jr.*, and *Thomas M. Beline,* Cassidy Levy Kent (USA) LLP, of Washington, DC, for defendant-intervenors Husqvarna Construction Products North America and Hebei Husqvarna-Jikai Diamond Tools Co., Ltd.

*Max F. Shutzman*, *Bruce M. Nitchell*, *Dharmendra N. Choudhary*, and *Kavita Mohan*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of Washington, DC, for defendant-intervenor Weihai Xiangguang Mechanical Industrial Co., Ltd.

*Gregory S. Menegaz* and *J. Kevin Horgan*, deKeiffer & Horgan, of Washington, DC, for defendant-intervenors Bosun Tools, Co., Ltd. and Bosun Tools Inc.

Musgrave, Senior Judge: The prior opinion on this matter remanded the plaintiff's challenge to the second administrative review of *Diamond Sawblades from the People's Republic of China* ("PRC") covering the 2010-2011 period.[1] *See* 38 CIT ___, Slip Op. 14-112 (Sep. 23, 2014). The final results of remand ("*Final Remand Redetermination*" or "RR"), dated May 18, 2015, from the defendant International Trade Administration, U.S. Department of Commerce ("Commerce") are now before the court, and the issues have been reduced to (1) the appropriateness of the country-wide rate of antidumping duty (reduced to 82.12% via remand) on subject merchandise, and (2) the administrative decision not to analyze the petitioners' targeted dumping allegation against one of the respondents, as restated on remand.

---

[1] *Diamond Sawblades and Parts Thereof From the PRC*, 78 Fed. Reg. 36166 (Jun. 17, 2013) ("*AR 2 Final*"), PDoc 471, *amended* 78 Fed. Reg. 42930 (Jul. 18, 2013) ("*Amended AR2 Final*"), PDoc 487, and accompanying issues and decision memorandum ("*IDM*") (July 11, 2014), PDoc 455.

By way of brief background, the matter was remanded in part, at Commerce's request, for reconsideration of the determination to grant a separate rate to the "ATM entity,"[2] an issue on which the court also requested evaluation of whether the China Iron and Steel Research Institute ("CISRI") should be considered part of the collapsed ATM entity. Additionally, the matter was remanded for explanation of the methodology for valuing the steel sawblade cores of defendant-intervenor Weihai Xiangguang Mechanical Industrial Co., Ltd. ("Weihai"). The third issue remanded concerned the plaintiff Diamond Sawblades Manufacturers' Coalition's ("DSMC") challenge to Commerce's rejection of their allegation that Weihai had engaged in "targeted dumping." The DSMC's argument was that the agency had failed to explain why the allegation was untimely filed given the absence of any statutory, regulatory, or other deadlines requiring that such arguments be presented prior to the case briefs. *See* Pl.'s 56.2 Mot. at 34-38. The matter was remanded, however, for threshold explanation of the authority for requiring a targeted dumping allegation as a prerequisite to determining "if . . . there is a pattern" of export prices or constructed export prices that differ significantly among purchasers, regions, or periods of time. Slip Op. 14-112. *See* 19 U.S.C. §1677f-1(d)(1)(B); *see also I&D Memo* at 14-15.

The papers here persuade that sustaining the results of remand is appropriate.

---

[2] The "ATM entity" is a "collapsed" respondent in the underlying administrative review including the defendant-intervenors Beijing Gang Yan Diamond Products Co. and Gang Yan Diamond Products, Inc. (hereinafter "ATM"). *See* 19 C.F.R. §351.401(f). For purposes of the administrative review, the ATM entity was determined to consist of the three affiliates in the underlying investigation: ATM, Advanced Technology & Materials Co., Ltd., and Yichang HXF Circular Saw Industrial Co., Ltd.), combined with the additional affiliates AT&M International Trading Co., Ltd., and Cliff International Ltd. RR at 1 n.1, referencing Memorandum *re Diamond Sawblades and Parts Thereof from the PRC: Determination to Include Additional Companies in the ATM Single Entity* (Nov. 30, 2011), CDoc 103, PDoc 118; *see also IDM* at 2.

*Discussion*

Regarding the agency's redetermination on remand, on the record presented, of the ATM entity's non-entitlement to a separate rate, and consistent with such redetermination in *Advanced Technology & Materials Co. v. United States*, Court No. 09-00511 ("*Advanced Tech*"), *remand results sustained*, 37 CIT ___, 938 F. Supp. 2d 1342 (2013), *aff'd*, 581 Fed. Appx. 900 (Fed. Cir. 2014), Commerce found that the ATM entity failed to rebut the presumption of state control and demonstrate entitlement to a separate rate; therefore, Commerce also found that the issue of whether CISRI should also be collapsed is moot. ATM does not contest the redetermination of ineligibility for a separate rate, but instead focuses on the PRC-wide rate to which the ATM entity is subject. That subject was considered in the recent opinion concerning the prior (first) administrative review. *Diamond Sawblades Manufacturers Coalition v. United States*, 39 CIT ___, Slip Op. 15-105 (Sep. 23, 2015). Perceiving no reason to depart therefrom, the court defers to that opinion and hereby sustains the determination that the ATM entity is subject to the PRC-wide antidumping duty rate. Further, regarding the readjustment of the PRC-wide rate, the parties' arguments thereon appear to be identical in substance to those considered in that opinion, *see id.*, to which the court will also, therefore, defer. Incorporating the reasoning thereof herein, the readjustment of the PRC-wide rate is hereby sustained.

Regarding the valuation of Weihai's steel cores, Commerce on remand explained that the build-up multiplier methodology used in the final remand results "follows more closely . . . the statutory guidance to use surrogate data from market economy countries at a level of economic development comparable to that of the [non-market economy ("NME")] country to value [factors

of production] in an NME antidumping proceeding" and results in "greater accuracy in the margin calculations" than the methodology used in the original results of *AR2 Final*. RR at 15-16. Although the DSMC raised several concerns regarding Commerce's explanation, they do not contest the results of remand with respect to this issue. *See* DSMC Cmts. at 3 n.3. Commerce calculated a margin of zero percent for Weihai, and based on that margin assigned a zero margin rate to the separate rate respondents. RR at 42. The validity of that determination is dependant upon the discussion of the following issue.

Regarding Commerce's rejection of the DSMC's argument that Weihai had engaged in targeted dumping[3] during the period of review, the matter was remanded for explanation of the non-ministerial discretion not to determine whether a record evinces targeted dumping. *See* Slip Op. 14-112 at 7-8. The remand results explain that the targeted dumping provision applies by its express terms to investigations, that Commerce determined, pursuant to the *Final Modification*, to apply the "alternative comparison method" of that provision perforce to administrative reviews, that its practice has consistently required a timely-filed allegation by the petitioner, and that at the time of the underlying review an allegation of targeted dumping had to be made at a reasonable time prior

---

[3] "Targeted dumping" means "a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time" as compared with normal values. 19 U.S.C. §1677f-1(d)(1)(B). Prior to 2012, for administrative reviews, Commerce compared U.S. prices and normal values by comparing monthly average-to-transaction ("A-T") data. As such, targeted dumping, which a comparison of average-to-average ("A-A") monthly data potentially masks, was not a methodological problem. Early in 2012, however, Commerce announced that the default methodology for calculating dumping margins in administrative reviews would be based on A-A monthly data, and that it would resort to alternative methodology "when deemed appropriate in a particular case" (*e.g.*, A-T in a case of targeted dumping). *See generally Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin and Assessment Rate in Certain Antidumping Duty Proceedings*, 77 Fed. Reg. 8101, 8103-07 (Feb. 14, 2012) (final rule; final modification) ("*Final Modification*").

to the issuance of the preliminary determination "so we could allow parties an opportunity to evaluate the allegation and provide comments on the results of the targeted dumping analysis." RR at 11. *See also* Weihai Cmts at 3-5; Husqvarna Cmts at 5-11.

The DSMC briefly argue that Commerce's explanation is not responsive to the court's request for explanation of the agency's treatment of the targeted dumping statute. Although the court still has concerns regarding Congress' intent as expressed in the targeted dumping statute,[4] further argument thereon has not been advanced, and the court will therefore focus on the remaining arguments on the record.

---

[4] In particular, while the terms of the targeted dumping provision apply to investigations, the fact that Commerce interprets those terms as providing "guidance" does not mean those terms are ambiguous; further, while parties bear a burden of creating an adequate record, Commerce still has a duty to correctly interpret that record. Defendant-intervenors Husqvarna Construction Products North America and Hebei Husqvarna-Jikai Diamond Tools Co., Ltd. ("Husqvarna") point out that Commerce's targeted dumping practice is not the only instance where the statute governing the analysis does not use "allege" or some derivation thereof: Commerce's interpretation of the sales-below-cost provision, 19 U.S.C. § 1677b(b), requires parties to timely file an allegation that there are home market sales at prices below the producer's cost of production, and Commerce's interpretation of the major input rule, 19 U.S.C. §1677b(f)(3), requires an allegation that major inputs into the production process are purchased at prices below an affiliate's cost of production. "These allegations are required even though the statutory provisions impose a duty upon Commerce to disregard home market sales or disregard purchase prices of inputs into the cost of production if the statutory requirements are satisfied. Where the statute does not expressly preclude Commerce from requiring an allegation, Commerce's interpretation and practice requiring an allegation cannot be invalidated under *Chevron* step one." Husqvarna Cmts. at 7. That does not, however, lead to the conclusion that the absence of an allegation relieves or precludes the agency from a duty to correctly interpret the record, which would seem to include determining "if . . . there is a pattern", an issue that does not concern the submission of new or separate factual matter. *Cf. JBF RAK LLC v. United States*, 790 F.3d 1358, 1365 (Fed. Cir. 2015) ("the facts that served as the basis" for the targeted dumping "claim already were on the record", quoting Commerce). For example, Commerce's requirement of an allegation of the "market viability" for a product pursuant to 19 C.F.R. §351.404(d) does not, apparently, compel reliance upon the alleged market in the absence of an allegation that the market is not viable. *See, e.g.*, *Preliminary Determination of Sales at Less Than Fair Value: Ball Bearings and Parts Thereof From Singapore*, 53 Fed. Reg. 45339 (Nov. 9, 1988).

Generally speaking, the DSMC contend that in most of the limited number of reviews subject to the *Final Modification* that have involved targeted dumping allegations, the allegations pre-dated the preliminary results of the reviews and the agency postponed consideration of the allegations until the final phase. *See, e.g.*, *Certain Pasta from Turkey*, 77 Fed. Reg. 46694 (Aug. 6, 2012) (prelim. results of the 2010-2011 antidumping duty admin. rev.); *Polyethylene Terephthalate Film, Sheet, and Strip From India*, 77 Fed. Reg. 46687 (Aug. 6, 2012) (prelim. results of antidumping duty admin. rev.). The DSMC acknowledge that such cases do not, by themselves, shed any light on the amount of time realistically required to analyze a targeted dumping allegation, but they argue the cases tend to show that the agency is inclined to use as much time as is available to it, as is its right. In particular, the DSMC point out, in an antidumping duty review of seamless refined copper pipe and tube from Mexico the petitioners filed their targeted dumping allegation just 12 days prior to the due date for the preliminary results. DSMC Cmts at 19 n.11, referencing issues and decision memorandum accompanying *Seamless Refined Copper Pipe and Tube From Mexico*, 77 Fed. Reg. 73422 (Dec. 10, 2012) (prelim. results of antidumping duty admin. rev.) at 2-3 ("*Seamless Tube Memo*"). The next day, the DSMC further point out, Commerce postponed the preliminary results by four months, and within that period of time Commerce solicited responses on the allegations from the respondents, received additional comments from the parties, and was able to fully analyze the targeted dumping allegations. *Id.* referencing, *inter alia*, *Seamless Tube Memo* at 2-3. The DSMC contend this suggests that a time period of approximately four months is sufficient to analyze a targeted dumping allegation and that, in any event, Commerce does not appear to have even enforced its own "deadline" concerning the submission of targeted dumping allegations.

However, in the final analysis the DSMC do not persuade that Commerce's rejection of their targeted dumping allegation as untimely should be deemed arbitrary, capricious, or abusive. The DSMC acknowledge notice of the *Final Modification*, which explicitly announced that Commerce would apply the new targeted dumping methodology in reviews in which "*preliminary* determinations" were not due for at least 60 days from the date of its publication of the *Final Modification*, 77 Fed. Reg. at 8101 (italics added), and the preliminary results of the review at bar were issued 10 months after the *Final Modification*'s publication. Although there were no established or articulated deadlines for the filing of targeted dumping allegations for administrative reviews, the DSMC were not, apparently, unaware of Commerce's apparent targeted dumping practice, in particular with respect to investigations, which requires an allegation thereof prior to the preliminary determination.

In addition, Weihai points out that the claim of targeted dumping was filed for the first time in the DSMC's administrative case brief on February 19, 2013, notwithstanding that the original Weihai sales database was of record since April 18, 2012, and Commerce's preliminary determination was issued December 3, 2012, or 78 days before the allegation was made. In contrast to that time frame, Commerce's explanation as to why it requires a targeted dumping allegation prior to filing an administrative case brief on the preliminary results, *i.e.*, so as to provide interested parties an opportunity to comment on the results of a targeted dumping analysis, is not inherently unreasonable, and as Weihai and Husqvarna further argue, the timing of a targeted dumping allegation must be considered in light of the time remaining for completion of the review at the time of the allegation, not in hindsight. The fact that Weihai did in fact substantively respond to the

allegation is unsurprising and of little moment: if Commerce had determined to accept and consider the allegation, Weihai would have run the risk of a failure to exhaust administrative remedies had it not done so. Lastly, although Commerce did conduct a further post-preliminary inquiry and analysis into another issue involving Weihai, for which Commerce solicited and obtained post-briefing comments by the parties, indications are that Commerce did so as a result of changing its core valuation calculation methodology after the preliminary determination, and appropriately solicited comments as a result. It is unclear whether the DSMC might have used the opportunity at that time, once it became clear that the final determination would be delayed, to request again that Commerce conduct a targeted dumping inquiry, but that question is now moot, and in any event the foregoing considerations do not persuade that the separate inquiry into the change in core valuation methodology, and the resultant delay in making a final determination, renders Commerce's rejection of the targeted dumping allegation arbitrary, capricious, or an abuse of discretion.

*Conclusion*

After considering the parties' arguments, Commerce's *Final Remand Redetermination* will be sustained and separate judgment to that effect entered in accordance with this opinion.

   /s/  R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: October 21, 2015
            New York, New York